IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>ÁNGEL VILLODAS-ROSARIO,<br><br>**Defendant.** | CRIM. NO. 14-663(RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Ángel Villodas-Rosario's ("Villodas-Rosario" or "Defendant") *Motion for 18-Month Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)* ("*Motion for Compassionate Release*"), back on remand from the First Circuit. (Docket No. 101). For the reasons set forth below, the request for compassionate release is **DENIED**.

## I. BACKGROUND

On October 30, 2014, a Grand Jury returned a four-count indictment charging Villodas-Rosario with possession with intent to distribute marihuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D) (Count One); possession of a machinegun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (Count Two); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three); and possession of a firearm by a

convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Four). (Docket No. 10).

The offense conduct was based on the following stipulation of facts, which Defendant adopted as accurate. (Docket No. 35 at 5, 9-10; *see* Docket No. 41 at 4-6). On October 20, 2014, agents of the Puerto Rico Police Department executed two state-issued search warrants for Villodas-Rosario's residence and vehicle. (Docket No. 35 at 9). Inside the residence, police found a 9mm Glock magazine loaded with 17 rounds of ammunition, a drum magazine loaded with 49 rounds of ammunition, 1,459 grams of marihuana, and $5,134 in U.S. currency. Id. Inside the vehicle, police recovered a 9mm caliber, model 17 Glock pistol loaded with 18 rounds of ammunition, as well as $7,000 in money orders. Id. After being placed under arrest and advised of his constitutional rights, Villodas-Rosario "voluntarily admitted to law enforcement agents that the marihuana, magazines, ammunition, and the Glock pistol found during the execution of the search warrant belonged to him." Id.

On February 27, 2015, Villodas-Rosario pled guilty to Count Three of the Indictment in exchange for the Government moving to dismiss the remaining counts. (Docket Nos. 34 and 35). In the written plea agreement, both Defendant and the Government agreed upon a sentence recommendation of 96 to 204 months. (Docket No. 35 at 3). The parties specified that "any sentencing recommendation

above or below the above-stipulated range constitutes a material breach of this Plea and Forfeiture Agreement." Id. at 4.

At the Sentencing Hearing, the parties again highlighted in open court that the plea agreement states: "[t]he United States reserves the right to recommend a sentence not to exceed seventeen (17) years of imprisonment, and Defendant reserves the right to recommend a sentence as low as eight (8) years of imprisonment." (Docket No. 62 at 3-6; see Docket No. 35 at 3). However, the parties noted that they agreed to shorten the range to the Government recommending *at least* 10 years,[1] "with the understanding that if [the court] sentences within the range of [8] to 17 [years], then the defendant waives his right to appeal." (Docket No. 62 at 4).

After addressing the offense conduct, discussing Defendant's arrest and criminal history, commenting on the problem of gun violence in this jurisdiction and its handling by state courts, the sentencing court allowed Villodas-Rosario to allocute and provided both parties an opportunity to argue for their recommended sentence. (Docket No. 62 at 6-32). Defendant was ultimately sentenced to 144 months' imprisonment. Id. at 32-37. Defendant's

---

[1] The basis for this consideration was a possible *Franks* issue with respect to certain police records. (Docket No. 62 at 32). Defense counsel noted that she considered filing a *Franks* motion in light of a "very shady administrative record," but in the end she decided against doing so, acknowledging that the search result was a positive "huge hit." Id. at 14-17, 38-43.

Criminal No. 14-663 (RAM)                                                     4

counsel requested an immediate reconsideration of the twelve-year sentence. Id. at 37-43. The sentencing judge overruled the request and reiterated that, "forget[ting] about the number of arrests" in Defendant's record, Villodas-Rosario signed a plea agreement with a sentence recommendation range of up to 204 months' imprisonment, as well as the possibility of up to life imprisonment statutorily. Id. at 42-43. Furthermore, a 144-month sentence is adequate for "the kind of firearms [Defendant] has, the situation he has, [and] the person that he is in the context of the facts." Id.

After the hearing, Defendant filed a *Motion for Reconsideration of Sentence*, arguing that the sentencing court's repeated reference to United States v. González-Román, 115 F.Supp.3d 271 (D.P.R. 2015) and a Memorandum issued therein regarding weapons cases, violence in Puerto Rico, and the need to impose adequate sentencing (the "González-Román memorandum") was troubling. (Docket No. 45). Given the enormous contrast in the factual scenario between González-Román and the present case, as well as the imposition of a twelve-year sentence for a crime that did not involve violence or victims, Defendant asked this court to reconsider his sentence. Id. at 2-5. The sentencing court denied the reconsideration and clarified that "[t]he Gonzalez-Roman memorandum was cited to portray the general picture of criminality

in this jurisdiction, not to say that Villodas' case was the same as that of Gonzalez Roman." (Docket No. 47).

Defendant then appealed, arguing the appeal waiver was unenforceable, and that the sentence imposed was substantively and procedurally unreasonable. (Docket No. 49). On August 21, 2018, the First Circuit dismissed Villodas-Rosario's appeal and affirmed his sentence, holding that the appeal waiver provision from the plea agreement was enforceable. (Docket No. 64). "Given the clarity of the written provision, the lack of objection at any time to the meaning of the appellate waiver, and defense counsel's representations to the court," the First Circuit held that "Villodas-Rosario understood at the time he entered his plea that he agreed to forego the right to appeal if his sentence fell within the provided-for range." Id. at 15-16.

On November 30, 2022, Defendant filed his *Motion for Compassionate Release*, arguing that his 144-month sentence is premised on the "wholly unsupported presumption" that Villodas-Rosario is guilty of dismissed state-court charges and "on the sentencing judge's misguided ideas about the shortcomings of the Courts of the Commonwealth of Puerto Rico." (Docket No. 101 at 8-13). As a preliminary matter, Defendant claims he submitted a request to the warden requesting compassionate release, and given that 30 days passed without response, he exhausted administrative

Criminal No. 14-663 (RAM)                                                                6

remedies. Id. at 8-9. Defendant then asserts that the "sentencing judge's presumption-of-guilt approach to dismissed state charges, combined with its view that a hefty sentence was necessary to compensate for the perceived flaws of the state courts," has been rejected by the First Circuit and constitutes an extraordinary and compelling reason for a sentence reduction. Id. at 9-13 (citing United States v. Dávila-Bonilla, 968 F.3d 1 (1st Cir. 2020); United States v. Marrero-Perez, 914 F.3d 20 (1st Cir. 2019); United States v. Castillo-Torres, 8 F.4th 68 (1st Cir. 2021)). Specifically, Defendant contends the sentencing judge based his sentence on the unfounded belief that Villodas-Rosario was actually guilty of all the charges reported in paragraphs 38 to 42 of the PSR, honing in on arrests and charges that did not lead to convictions. Id. at 9-10; see United States v. Rivera-Ruiz, 43 F.4th 172, 181-84 (1st Cir. 2022) (collecting cases). Defendant requests an 18-month sentence reduction based on the § 3553(a) factors, highlighting his tumultuous upbringing and early setbacks in life, the educational and vocational accomplishments he has achieved since then, and the community and family support he has to re-enter society. (Docket No. 101 at 14-17).

In its *Response in Opposition to Petitioner Angel Villodas-Rosa[rio]'s Motion for Compassionate Release* ("*Response*"), the Government highlights that the 144-month sentence Defendant

received was five years less than the top-end of the range he agreed to upon entering his bargained-for plea agreement. (Docket No. 103 at 1). Both parties reached the agreement after considering the aggravating and mitigating factors, and the terms allowed Villodas-Rosario to plead to the lesser-included offense of possession of a firearm in furtherance of drug trafficking – which carries a five-year mandatory minimum sentence as opposed to 30 years for possession of a machine gun in furtherance of a drug trafficking crime. Id. Additionally, the Government asserts that there is no evidence in the record establishing Villodas-Rosario met his burden of exhausting administrative remedies prior to filing his motion. Id. at 3. While the Government concedes that the sentencing judge's consideration of Defendant's history of arrests "may be at odds with the state of the law as it exists today," it argues that the matter at issue is not whether in hindsight the court imposed an unreasonable sentence. Id. at 5-8. Furthermore, it maintains that "the proper vehicle for raising such a question would be a direct appeal or a petition for habeas corpus." Id. The Government asserts that the relevant inquiry when evaluating Defendant's request for compassionate release is whether there are any extraordinary and compelling reasons to warrant an 18-month sentence reduction. Id. at 6-7. As such, the Government argues that Defendant fails to argue any circumstances

meriting such a result, but instead raises arguments nearly identical to those he raised on direct appeal. Id.

The Defendant filed a *Petitioner's Reply Memorandum* ("*Reply*"), maintaining that Defendant is not merely re-asserting arguments from direct appeal or asking this Court to review the substantive reasonableness of his sentence, but rather asks this Court to assess "new, intervening changes in the caselaw against the extraordinary-and-compelling-reasons standard; to reweigh the sentencing factors; and to grant a modest, 18-month sentence reduction." (Docket No. 106 at 2-3). As to exhaustion, Defendant appended documents evincing he exhausted his remedies. Id. at 5. Defendant avers the imposed sentence is "so afflicted by a sentencer's biases, his presumption of guilt and due-process-depriving suppositions" that such constitutional errors are extraordinary and compelling. Id. at 6-7. Lastly, Defendant highlights that the Government failed to address his § 3553(a) arguments. Id. at 7-8.

On March 28, 2023, this Court issued an Order denying Defendant's *Motion for Compassionate Release*, holding that Defendant's arguments regarding his sentence cannot be raised in a motion for compassionate release and iterating:

> The First Circuit has explained that "the compassionate release statute is addressed to the court's discretion as to whether to

> exercise leniency based on an individualized review of a defendant's circumstances (it is not a demand of a district court to recognize and correct what a defendant says is an illegal conviction or sentence)." U.S. v. Trenkler, 47 F.4th 42, 48 (1st Cir. 2022) (citations omitted). Moreover, the Court notes that Defendant received a guideline sentence that was within the range contemplated in his plea agreement.

(Docket No. 108). Defendant appealed. (Docket No. 110).

A little more than a year and a half later, on November 7, 2024, the First Circuit issued its opinion on the appeal, vacating and remanding for further consideration informed by relevant precedent from this court. (Docket No. 114).

## II.  LEGAL STANDARD

Ordinarily, a court may not modify a term of imprisonment once it is imposed. *See* 18 U.S.C. § 3582(c). However, it may grant compassionate release to a defendant subject to certain requirements. Id. § 3582(c)(1)(A).

Pursuant to section 3582(c)(1)(A), a court may not modify a final sentence unless a defendant has "fully exhausted all administrative rights to appeal a failure of" the BOP to bring a motion for reduction of sentence on his behalf or if 30 days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. Even if these conditions are met, the district court must consider "the factors

set forth in section 3553(a) to the extent that they are applicable," and there **must still be** "extraordinary and compelling reasons" warranting a reduction. Id. § 3582(c)(1)(A)(i); *see also* United States v. Saccocia, 10 F.4th 1, 4 (1st Cir. 2021) (providing general principles for evaluating compassionate release motions). The defendant bears the burden of establishing that extraordinary and compelling reasons exist, that he is no longer a danger to the community, and that the section 3553(a) factors favor release. United States v. Galiany-Cruz, 2023 WL 6458535, at *1 (1st Cir. 2023); United States v. Miranda-Rojas, 2023 WL 7181650, at *1 (1st Cir. 2023).

In United States v. Ruvalcaba, the First Circuit addressed whether district courts were bound by the Sentencing Guidelines Policy Statement when deciding motions for compassionate release. 26 F.4th 14 (1st Cir. 2022). Because the most relevant policy statement at the time Ruvulcaba was decided had not been amended since November 2018, the First Circuit held that district courts had "discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." Id. at 23 (citation omitted).

However, on November 1, 2023, the United States Sentencing Commission's ("USSC") policy statement on motions for

compassionate release initiated by prisoners took effect. *See* U.S.S.G. § 1B1.13. Since the USSC has provided updated guidance, "district courts addressing such motions not only will be bound by the statutory criteria but also will be required to ensure that their determinations of extraordinary and compelling reasons are consistent with that guidance." Ruvulcaba, 26 F.4th at 23-24. The First Circuit expects district courts "to take heed of" the new policy statement when determining whether a defendant is eligible for compassionate release. United States v. Rivera-Rodríguez, 75 F.4th 1, 18 n.22 (1st Cir. 2023). Accordingly, the "window" during which Ruvucalba's holding regarding policy statements controlled and district courts were granted broad discretion has "clos[ed]." *See* United States v. Gonzalez, 68 F.4th 699, 704 n.2 (1st Cir. 2023) (noting the gap in guidance on prisoner-initiated motions and the then-upcoming amendments to U.S.S.G. § 1B1.13).

This Court chooses to re-analyze Villodas-Rosario's *Motion for Compassionate Release* under the new set of policy statements, even though Defendant filed his motion in November 2022. The policy statement outlines six circumstances that individually or in combination may constitute extraordinary and compelling reasons warranting relief: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether defendant was a victim of abuse while incarcerated; (5)

Criminal No. 14-663 (RAM)                                                12

"other reasons" similar in gravity to the preceding four reasons; and (6) whether the defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b). Moreover, the court must determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Id. § 1B1.13(a)(2).

### III. DISCUSSION

The Court begins by addressing a threshold matter. It appears that Defendant has met the administrative exhaustion requirement of section 3582(c)(1)(A). Villodas-Rosario states that he submitted a request that the warden of his facility file a motion on his behalf on October 28, 2023, and that more than thirty days elapsed without a reply. (Docket No. 106-1). While the Government argued there was no evidence on the record showing the exhaustion requirement was met, Defendant subsequently appended the letter to his *Reply*. *See* id. The Court therefore proceeds to evaluating the merits of the *Motion for Compassionate Release*. *See* United States v. Quirós-Morales, 83 F.4th 79, 84 (1st Cir. 2023) (so doing); United States v. Texeira-Nieves, 23 F.4th 48, 53 (1st Cir. 2022) (holding the administrative exhaustion requirement is a "non-jurisdictional claim-processing rule").

The Court denies Defendant's Motion for Compassionate Release for two reasons. First, he fails to present extraordinary and

compelling circumstances, either individual or in combination, that would justify release. Second, he has not shown that release is warranted given the factors set out in 18 U.S.C. § 3553(a).

### A. Defendant does not present extraordinary and compelling reasons justifying release.

Having reviewed Defendant's petition, the only potentially applicable extraordinary and compelling reason in this case would be a claim of an unusually long sentence. According to U.S.S.G. § 1B1.13(b)(6), an "unusually long sentence" may constitute an extraordinary and compelling reason favoring release:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

As the First Circuit noted, "Villodas based his motion on a claim that the sentencing court had committed legal error by giving consideration to arrests that had not resulted in criminal prosecutions or convictions, a claim of error consistent with precedent post-dating Villodas's sentencing." (Docket No. 1114 at 2); see Marrero-Pérez, 914 F.3d; Castillo-Torres, 8 F.4th.

Even assuming the sentencing judge committed error by today's standards in bringing up a discussion of Villodas-Rosario's arrest history, those statements alone do not constitute an extraordinary circumstance justifying compassionate release. Such a change in law of what a judge may permissibly consider at sentencing would not inherently produce a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed" in this case, given the full consideration of Defendant's individualized circumstances. *See* U.S.S.G. § 1B1.13(b)(6). First and foremost, *both* the Government and Defendant agreed upon a permissible sentencing range when drafting the plea agreement, in which the judge was free to impose a sentence between 96 to 204 months. Defendant's sentence, 144-months, falls in the lower half of that agreed-upon range.

Furthermore, the plea agreement between the parties provided Defendant a benefit he would not have otherwise received had the Government not dismissed Counts One, Two, and Four of the Indictment. Comparatively, had Villodas-Rosario opted for trial and been convicted, the remaining counts of the Indictment would have been grouped together in a combined offense level pursuant to U.S.S.G § 3D1.2(d), and his imprisonment term for Count Three would have run consecutively to any term of imprisonment imposed for Counts One, Two, and Four. (Docket No. 41 at 14). Additionally, as

the First Circuit highlighted in its defense of the sentence on direct appeal, one of "several key provisions" from the plea agreement included "the government agree[ing] to dismiss a related charge for possession of a machine gun, which carried a mandatory minimum of 30 years' imprisonment." (Docket No. 64 at 2); *see* 18 U.S.C. § 924(c)(1)(B)(ii). Instead, Villodas-Rosario was able to plea to a charge that carried a statutory minimum term of imprisonment of five years with a maximum term of life. *See* 18 U.S.C. § 924(c)(1)(A)(i).

Therefore, even though the sentence imposed was greater than the guideline sentence – the minimum term of imprisonment required by statute, pursuant to U.S.S.G. § 2K2.4(b) – it was not unusually long given the totality of the circumstances, both at the time of sentencing or at the time of the *Motion for Compassionate Release*. Defendant bargained for a set sentencing range in his plea agreement, based on an undisputed set of facts with aggravating and mitigating factors, and ultimately received a sentence at the *lower half* of the determined mutually acceptable range. While the exact terms of the plea agreement could have differed depending on the parties involved, there is no indication that a "gross disparity" occurred given the facts of this case and the established agreement – *even if* the sentencing judge's comments would not be permissible under current precedent. Accordingly, the

length of his sentence is not a sentencing disparity that warrants release.

**B. Defendant has not shown that the section 3553(a) factors warrant release.**

A district court need only address the section 3553(a) factors if it has already found there is an extraordinary and compelling reason favoring release. Texeira-Nieves, 23 F.4th at 52. Nevertheless, a section 3553(a) analysis may aid a reviewing court. Id.

Section 3553(a) instructs courts to consider the nature and circumstances of the offense, as well as the history and characteristics of the individual defendant. 18 U.S.C. § 3553(a)(1). Additionally, there is a need for the sentence imposed to, among other things, "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Id. § 3553(a)(2)(A). In conjunction with that, courts should also consider whether the sentence affords adequate deterrence to criminal conduct and protects the public from future crimes by a defendant. Id. § 3553(a)(2)(B)-(C). Further, district courts may consider "the kinds of sentences available," id. § 3553(a)(3), and "the need to avoid unwarranted sentence disparities" among similarly situated defendants. Id. § 3553(a)(6). However, not every factor needs to be addressed

mechanically, and it is assumed that section 3553(a) factors left unaddressed were simply unpersuasive. *See* Saccocia, 10 F.4th at 10.

    i.   The Nature and Circumstances of the Offense

In his *Motion for Compassionate Release*, Defendant first argues that while section 3553(a) factors consider the need to promote respect for the law, research has indicated that increasing the severity of punishment for a crime does little to actually deter crime. (Docket No. 101 at 14-15). Moreover, he asserts that unduly severe sentences, in this case aimed at compensating for the presumed flaws of the state judicial system, do nothing besides "erode public trust in the judicial institution." Id. Therefore, Defendant proffers that a modest sentence reduction in his case "will not come at the expense of decreased deterrence." Id.

However, Defendant fails to address the serious nature and circumstances of his offense. Defendant was found in possession of a Glock pistol loaded with 18 rounds of ammunition, a magazine loaded with 17 rounds of ammunition, and a drug magazine loaded with 49 rounds of ammunition, in addition to 1,459 grams of marihuana. (Docket No. 35 at 9). Furthermore, Defendant knowingly possessed a firearm after being convicted of a prior felony, and *knew* the firearm had a "modified chip to fire in full automatic mode as a machine gun." (*See* Docket No. 41 at 5).

    ii.   The History and Characteristics of the Defendant

Turning to Defendant's history and characteristics, Villodas-Rosario focuses on his "tumultuous upbringing," where he witnessed domestic violence as well as drug and alcohol abuse. Id. at 15. Defendant was raised by a drug-addicted mother in a government-subsidized housing complex, left school in fifth grade to wash cars and assume a parental role over his younger siblings, and was removed by Social Services at the age of 14 for placement in a Job Corps program. Id. After completing the program, Defendant resided with his father until his father was federally indicted on drug charges, at which point he returned to his mother. Id. at 15-16. Nonetheless, Defendant maintains that despite the setbacks and toxic environments, he has managed to show potential by completing his GED and a technical degree in computer programming, running his own hot dog stand, working for various years at family-run businesses, and standing by his family. Id. Furthermore, Defendant highlights that he has three children, a partner, and a home waiting for him, plus a community support to re-enter society. Id.

While it is encouraging that Defendant has a support system upon re-entering society, Defendant has failed to show that he does not pose a danger to that same community, considering the circumstances of the present offense as well as his past criminal history. *See* U.S.S.G. § 1B1.13(a)(2); *see also* 18 U.S.C. § 3142(g).

Without considering any history of prior arrests not resulting in conviction, Villodas-Rosario's present offense actions were especially concerning given Defendant's prior felony conviction of aiding and abetting in the possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). That conviction resulted in a 47-month sentence of imprisonment when he was 19 years old. Additionally, the instant offense occurred after all the advancements Defendant claimed to make since childhood. Defendant was also aware of his status as a felon when he chose to acquire the firearm. While Defendant attempts to swipe under the rug any concerns about dangerousness by saying "violence is inconsistent" with Villodas-Rosario's record, the sheer volume of ammunition in his possession and the automatic trigger capabilities of the Glock pistol decry that logic. (*See* Docket No. 101).

    iii.   <u>The Sentence Imposed</u>

Lastly, as discussed above, the sentence imposed takes into account the totality of circumstances surrounding Villodas-Rosario's case, including the important fact that he bargained for a set sentencing range in his plea agreement. While the crime of conviction was a lesser included offense, there was no question that Defendant possessed a firearm with machine gun capabilities, that he was aware of its nature, and possessed a significant amount

of ammunition. The mandatory minimum for possession of such a machine gun in furtherance of drug trafficking crimes is 30 years imprisonment, but crime Defendant pled guilty to an offense with a mandatory minimum of five years imprisonment and up to a maximum of life imprisonment. Acknowledging that major consideration, the sentencing range agreed to by both parties was above the mandatory minimum – given the mitigating and aggravating factors of this case.  Ultimately, the sentencing judge imposed a sentence in the lower half of the agreed upon range, and Defendant received the benefit of various counts being dismissed in exchange for his plea.

### IV.    CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendant Villodas-Rosario's *Motion for Compassionate Release* at Docket No. 101.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of November 2024.

                                    s/Raúl M. Arias-Marxuach
                                    UNITED STATES DISTRICT JUDGE